UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
RYAN CLARK, JOY JORDAN, RAYMOND　　　　　:
GIANGRASSO, TONY GONZALES,　　　　　　　　:
JOHNNY L. HEATHERMAN,　　　　　　　　　　　　　:
and MONELL WHITE, individually and　　　　　　　:
on behalf of themselves, and on　　　　　　　　　　　:
behalf of all those similarly situated,　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　: 06 Civ. 15521 (SHS)
　　　　　　　　　　　　　　Plaintiffs,　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　: OPINION & ORDER
　　　　　　-against-　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　:
MICHAEL J. ASTRUE, Commissioner of the　　　:
Social Security Administration, in his official　　　　:
capacity,　　　　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　Defendant.　　　　　　　　:
------------------------------------------------------------------x

SIDNEY H. STEIN, U.S. District Judge.

The Social Security recipients who brought this putative class action have established previously in this litigation that the Social Security Administration's policy of withholding benefits for individuals with an outstanding arrest warrant for a violation of probation or parole is invalid. They now move for certification of a class consisting of all individuals who, dating back to August 22, 1996, were deprived of benefits as a result that practice. The Court certifies a class that shall consist of only those individuals whose benefits were denied or suspended on or after October 29, 2006. Individuals receiving adverse benefit decisions before that date are excluded from the class because plaintiffs have not demonstrated that their claims are timely.

I. BACKGROUND

The facts of this case have been recounted in detail in decisions by this Court and the United States Court of Appeals for the Second Circuit. *See Clark v. Astrue* ("*Clark III*"), 602 F.3d 140 (2d Cir. 2010); *Clark v. Astrue* ("*Clark II*"), No. 06 Civ. 15521, 2008 WL 4387709

(S.D.N.Y. Sept. 22, 2008); *Clark v. Astrue* ("*Clark I*"), No. 06 Civ. 15521, 2007 WL 737489 (S.D.N.Y. Mar. 8, 2007).  In a nutshell, Congress amended the Social Security Act—first in 1996, again in 2004—to prohibit the payment of Supplemental Security Income ("SSI") and Old-Age, Survivor, and Disability Insurance ("OASDI") benefits to persons "violating a condition of probation or parole imposed under Federal or State law."  Personal Responsibility and Work Opportunity Reconciliation Act of 1996, Pub. L. No. 104-193, § 202(a), 110 Stat. 2105, 2185-86 (codified at 42 U.S.C. § 1382(e)(4)(A)(ii)); Social Security Protection Act of 2004, Pub. L. No. 108-203, § 203(a)(4), 118 Stat. 493, 509 (codified at 42 U.S.C. § 402(x)(1)(A)(v)).  To enforce these new exclusions, the Social Security Administration ("SSA") adopted a practice of denying or revoking benefits if an individual had an outstanding arrest warrant for a parole or probation violation.  *See Clark II*, 2008 WL 4387709 at *1-2.

Plaintiffs brought this putative class action in late 2006 seeking (1) a declaration that the amendments to the Social Security Act did not permit the SSA to deny benefits based solely on the existence of a warrant and (2) an injunction requiring the SSA to re-adjudicate adverse determinations made on this faulty basis.  (Comp. ¶ 80.)  On cross-motions for summary judgment, plaintiffs argued that the SSA could not find that an individual was "violating a condition of probation or parole," 42 U.S.C. §§ 402(x)(1)(A)(v), 1382(e)(4)(A)(ii), on the basis of a warrant issued upon probable cause because the statute requires a greater evidentiary threshold than probable cause.  Concluding that the reliance on warrants was consistent with the statute, this Court granted judgment for the SSA.  *Clark II*, 2008 WL 4387709 at *11.

The Second Circuit vacated that decision on appeal.  *Clark III*, 602 F.3d at 152.  The panel reasoned that generally "when Congress provides that a fact triggers civil legal consequences, it is requiring a finding that the fact is more likely than not true."  *Id.* at 148.

Finding no reason to deviate from this general rule, it concluded that the SSA may deny benefits only if a probation or parole violation is demonstrated by a preponderance of evidence. *Id.* at 147-48. Because the finding of probable cause that typically supports the issuance of a warrant does not satisfy the higher standard of a preponderance of the evidence, the Court of Appeals determined that the SSA's practice of relying exclusively on warrants to deny benefits "is contrary to the plain meaning of the [Social Security] Act." *Id.* at 147. The Second Circuit remanded this litigation to this Court for further proceedings. *Id.* at 152.

On remand, plaintiffs have now moved for certification of a class consisting of "[a]ll persons nationwide whose SSI and/or OASDI benefits were denied and/or suspended based solely on the existence of a warrant for an alleged violation of probation or parole during the period August 22, 1996 to and including such time in the future when Defendants halt their unlawful practices." (Pls.' Mem. in Supp. of Class Certification ("Pls.' Mem.") at 7.)

The SSA challenges class certification on two fronts. It argues that plaintiffs do not satisfy the prerequisites to class certification set forth in Federal Rule of Civil Procedure 23. It also maintains that the proposed class is overly broad.

Addressing the definition of the class first, the Court concludes that the proposed class should be left intact with the exception of its temporal scope. The Court also finds that plaintiffs have satisfied the requirements of Rule 23, making certification appropriate.

## II. DISCUSSION

### A. Scope of the Proposed Class

The SSA identifies four alleged flaws in the proposed class definition. The first three concern the prerequisites to judicial review of the SSA's benefit decisions set forth in Section 405(g) of the Social Security Act. Individuals may commence litigation challenging a denial of

3

benefits by the SSA if they first (1) present a claim to the SSA, (2) exhaust the SSA's administrative review process, and (3) bring suit within the 60-day statute of limitations. *See City of New York v. Heckler* ("*City of New York*"), 742 F.2d 729, 734 (2d Cir. 1984), *aff'd sub nom. Bowen v. City of New York* ("*Bowen*"), 476 U.S. 467 (1986). The SSA maintains that the proposed class definition is too broad because it encompasses individuals who failed to satisfy these preconditions to suit. The SSA's fourth objection is that the nationwide class proposed is inappropriate. The Court agrees that the class is overbroad insofar as it includes individuals who did not file suit within the applicable limitations period. Otherwise, the Court finds the scope of the proposed class to be appropriate.

      *1. Presentment*

     Section 405(g) authorizes federal court subject matter jurisdiction for individual challenges to SSA's eligibility determinations. *See Binder & Binder PC v. Barnhart*, 481 F.3d 141, 149 (2d Cir. 2007). A nonwaivable precondition to the exercise of that jurisdiction is that the individual first present a claim to the SSA. *Mathews v. Eldridge*, 424 U.S. 319, 328 (1976). Where an individual challenges the denial of newly-sought benefits, the initial application for benefits satisfies the presentment requirement. *City of New York*, 742 F.2d at 735. Where the challenge is to the suspension of existing benefits, both formal and certain informal requests for reinstatement of benefits constitute presenting a claim. *See id.* at 735-36. But the proposed class theoretically includes social security recipients who, in the face of the SSA's suspension of benefits, made no request at all with the SSA to have their benefits reinstated. Such individuals have not presented a claim. *See id.* at 735 ("[A] recipient subject to continuing eligibility review does not satisfy the presentment requirement through inaction."). The SSA correctly contends

that Section 405(g) does not authorize jurisdiction over the claims of these passive persons.  *See id.* at 736.

Nevertheless, individuals failing to present their claims can still be part of the class because the Court may exercise mandamus jurisdiction over their claims pursuant to 28 U.S.C. § 1361.  Pursuant to section 1361, "[t]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."  The requirements of mandamus are strict—the writ "will not issue unless (1) the plaintiffs have a right to have the act performed, (2) the defendant is under a clear nondiscretionary duty to perform the act requested, and (3) plaintiff has exhausted all other avenues of relief."  *City of New York*, 742 F.2d at 739.

Despite how strait that particular gate may be, the Second Circuit has twice approved the exercise of mandamus jurisdiction over non-presenting class members in comparable challenges to unlawful SSA adjudication methods.  *See id.* at 739 & n.7; *Ellis v. Blum*, 643 F.2d 68, 77-82 & n.10 (2d Cir. 1981).  Mandamus was appropriate in those cases because the plaintiffs were seeking to enforce a nondiscretionary procedural right granted by statute that could not be vindicated by exhausting administrative review with the SSA.  *See City of New York*, 742 F.2d at 739; *Ellis*, 643 F.2d at 78-79.  The same conditions obtain here.  As the Second Circuit held, class members have a statutory right to eligibility determinations based on a preponderance of the evidence.  *See Clark III*, 602 F.3d at 148-49.  And as this Court previously held, exhaustion of administrative remedies in this instance is futile.  *Clark I*, 2007 WL 737489 at *4.  Mandamus jurisdiction accordingly permits individuals who failed to satisfy the presentment requirement to participate in the class.

*2. Exhaustion*

The SSA next contends that the proposed class is overly broad because it embraces individuals who failed to exhaust fully the SSA's internal appeals process prior to seeking judicial redress, as required by Section 405(g). *See City of New York*, 742 F.2d at 736. Unlike presentment, exhaustion may be waived, *id.*, and, as just mentioned, the Court waived it here "on the grounds that it would be futile for plaintiffs to challenge the Secretary's interpretation of the statute in administrative hearings," *Clark I*, 2007 WL 737489 at *4.

The SSA submits that the subsequent success of three named plaintiffs in obtaining restoration of their benefits should prompt the Court to reject its prior ruling. This is not a compelling argument. As the Supreme Court and the Second Circuit have demonstrated, the fact that the idiosyncrasies of individual cases may permit some class members to obtain relief has no bearing on the exhaustion inquiry where, as here, plaintiffs challenge the manner in which the SSA adjudicates eligibility. *See Bowen*, 476 U.S. at 485-86; *New York v. Sullivan*, 906 F.2d 910, 918 (2d Cir. 1990). The Court adheres to its conclusion that exhaustion is futile for the reasons set forth in *Clark I*. As a result, individuals who did not exhaust administrative remedies are part of the class.

*3. Sixty-day limitations period*

The SSA's next objection is to the inclusion in the class of individuals who failed to seek judicial review of the agency's decision within the prescribed 60-day statute of limitations. Plaintiffs contend that the statute of limitations is no obstacle because it has been tolled since August 22, 1996. The Court finds that tolling of the statute of limitations is appropriate, but not to the extent that plaintiffs suggest.

Plaintiffs filed their class action complaint on December 28, 2006, which "suspend[ed] the applicable statute of limitations as to all asserted members of the class." *Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 554 (1974); *see Pavano v. Shalala*, 95 F.3d 147, 152 (2d Cir. 1996). The result is that individuals acquiring claims since that date have timely claims today. So too do individuals who had timely claims on that date—individuals denied benefits or who had their benefits suspended on or after October 29, 2006, 60 days prior to the filing of the complaint. Such persons are properly within the class.

The claims for individuals whose benefits were denied or suspended prior to October 29, 2006 are timely only if they are entitled to equitable tolling of the statute of limitations. "[E]quitable tolling permits courts to deem filings timely where a litigant can show that 'he has been pursuing his rights diligently' and that 'some extraordinary circumstance stood in his way.'" *Torres v. Barnhart*, 417 F.3d 276, 279 (2d Cir. 2005) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)). Plaintiffs bear "the burden of demonstrating the appropriateness of equitable tolling." *Boos v. Runyon*, 201 F.3d 178, 185 (2d Cir. 2000).

While in "most cases" the SSA determines whether to extend Section 405(g)'s 60-day limitations period, "cases may arise where the equities in favor of tolling the limitations period are so great that deference to the agency's judgment is inappropriate." *Bowen*, 476 U.S. at 480 (internal quotation marks omitted). Courts have found equitable tolling appropriate in Section 405 class actions where the record reveals that the SSA engaged in secretive or misleading conduct that "prevent[ed] plaintiffs from knowing of a violation of rights," i.e. plaintiffs lacked "a reasonable opportunity to learn the facts concerning the cause of action" until after the time for filing suit had already elapsed. *City of New York*, 742 F.2d at 738; *see id* (equitable tolling appropriate because "the Government's secretive conduct" was such that plaintiffs "did not and

7

could not know that [] adverse decisions had been made on the basis of a systematic procedural irregularity that rendered them subject to court challenge"); *Dixon v. Shalala*, 54 F.3d 1019, 1033 (2d Cir. 1995) (approved tolling of the limitations period because plaintiffs had "no way of knowing" that the SSA was systematically misapplying its own regulations); *Sullivan*, 910 F.2d at 917 (tolling was appropriate because plaintiffs "lacked the ability to know of the *per se* rules" they challenged prior to expiration of the statute of limitations).

Plaintiffs contend that equitable tolling is appropriate in this case because the SSA's exclusive reliance on warrants was "contrary to [its] own implementing regulation" and because the SSA "did not advise [beneficiaries] that their benefits were being halted based on a mere warrant." (Pls.' Reply in Supp. of Class Certification ("Pls.' Reply") at 9.) These contentions are unavailing.

Without offering any facts or arguments in support of their position, plaintiffs summarily assert that the SSA's reliance on warrants was a misapplication of the SSA regulation governing the suspension of benefits for parole and probation violators. (*Id.* at 9.) That is not the case. Though the Second Circuit on appeal suggested that the regulation is ambiguous, it did not address whether the regulation prohibited revocation of benefits on the basis of a warrant alone. *See Clark III*, 602 F.3d at 152. This Court previously addressed this issue and held that the SSA's reliance on warrants was not contrary to the regulation, *see Clark II*, 2008 WL 4387709 at *8-9, which authorizes the suspension of benefits starting from "[t]he month in which a warrant or order for the individual's arrest or apprehension . . . is issued by a court or other duly authorized tribunal on the basis of an *appropriate finding* that the individual—. . . [i]s violating, or has violated, a condition of his or her probation or parole . . . ." 20 C.F.R. § 416.1339(b) (emphasis added). The scope of this authorization turns on the meaning of "appropriate finding,"

an undefined and admittedly ambiguous term.  Given that the regulation authorizes suspension upon the issuance of arrest warrants and that the basis of such warrants is typically probable cause, it is reasonable to interpret an "appropriate finding" in this context as a finding based only on probable cause.  *See Clark II*, 2008 WL 4387709 at *8.  Because warrants rarely require a finding greater than probable cause, if the SSA "had intended to permit suspension of benefits on the basis of a warrant only in very rare instances, it would undoubtedly have said so more explicitly."  *Id.*

It is most assuredly the case that the SSA's regulation could have been clearer, but that alone does not warrant equitable tolling.  The Second Circuit has explained that the failure to publish a policy in a regulation does not make equitable tolling per se appropriate.  *See Dixon*, 54 F.3d at 1032.  The publication of an ambiguous regulation should not by itself necessitate equitable tolling either.  Like a nonexistent regulation, an ambiguous regulation does not necessarily prevent a plaintiff "from knowing of a violation of rights."  *City of New York*, 742 F.2d at 738.  Rather, the Court must decide whether equitable tolling is appropriate "on the facts of the case before [it]," that is whether "this is one of those 'rare case[s]' in which 'the equities in favor of tolling the limitations period are so great that deference to the agency's judgment is inappropriate."  *Dixon*, 54 F.3d at 1032 (quoting *Bowen*, 476 U.S. at 480, 481).

This brings the Court to plaintiffs' contention that the SSA did not put class members on notice that their benefits were halted or denied on the basis of a warrant for a probation or parole violation.  In support, plaintiffs cite a single piece of evidence: a letter received by former plaintiff Elaine Clark[1] in December 2005 from the SSA explaining that it "plan[s] to stop" Clark's benefits because "the law prohibits us from paying Social Security benefits to individuals

---

[1] Elaine Clark died in November 2008.  (Decl. of Joy Jordan dated June 10, 2010, at ¶ 3.)  Her children, Ryan Clark and Joy Jordan, have replaced her as plaintiffs in this action.  *See* Order dated March 14, 2011.  Unless otherwise indicated, references in this Opinion & Order to Clark as a plaintiff refer to Elaine Clark.

9

who have an outstanding arrest warrant for a crime which is a felony . . . or who have violated a condition of probation or parole under Federal or State law. We have information that you fall into one of these categories." (Pls.' Reply at 10 (quoting Ex. 1 to Decl. of Elaine Clark dated Jan. 2, 2007 ("Clark Decl.")).) Plaintiffs contend that these "form suspension notices distributed to beneficiaries did not advise them that their benefits were being halted based on a mere warrant, but rather falsely suggested that a finding of an actual parole or probation violation had been made." (Pls.' Reply at 9.)

The Court agrees that the paragraph cited by plaintiffs is ambiguous. But it cannot accept the conclusion that the SSA systematically failed to advise beneficiaries that their benefits were being denied on the basis of a warrant. The record does not support it.

The ambiguous December 2005 letter to Clark upon which plaintiffs rely was only announcing the SSA's intention to suspend her benefits. The later SSA letter, dated January 19, 2006, announcing the actual suspension of Clark's benefits was pellucid, stating clearly and simply as follows: "We cannot pay benefits to you because you have an outstanding arrest warrant for a violation of a condition of probation or parole under Federal or State law." (Ex. 3 to Clark Decl.) The letter also identified the outstanding warrant by the issuing jurisdiction, date and warrant number. (*Id.*) The suspension letter sent to plaintiff Monell White contained the exact same language and the same identifying information for his outstanding warrant. (Ex. 1 to Decl. of Monell White dated Jan. 2, 2007 ("White Decl.")). Contrary to plaintiffs' contention, these suspension announcements made it clear that it was the existence of a warrant for a probation or parole violation—and not a conclusive finding of an actual parole or probation violation—that was the basis for the denial of benefits.

Even the December 2005 letter to Clark cited above is not as uninformative as plaintiffs make it out to be.  Though no model of clarity, the letter describes the information the SSA was relying on as follows: "Our records show that the Santa Clara Co So, 55 Younger Ave, San Luis Obisbo, CA 95110, issued a warrant for your arrest for a felony crime or a violation of Federal or State probation or parole on November 21, 2002."  (Ex. 1 to Clark Decl.)  Thus, the letter indicated that the SSA was relying on a warrant, though not necessarily a warrant for a probation or parole violation.  But the letter does specify the warrant number and advises the recipient to contact the issuing jurisdiction for more information.  (*Id.*)

The declarations of plaintiffs Raymond Giangrasso and Johnny Heatherman submitted with plaintiffs' motion for certification do not contain the suspension letters they received, but there is no doubt that the SSA informed them that their benefits were revoked on the basis of an outstanding warrant for a probation or parole violation.  Giangrasso specifically states this to be the case: "In or about 2001, I received a letter from the SSA, advising that my benefits would be suspended due to an outstanding warrant for my arrest for an alleged violation of the terms of my probation." (Decl. of Raymond Giangrasso dated Jan. 2, 2007 ("Giangrasso Decl."), at ¶ 6.) Giangrasso also filed a motion to set aside his outstanding warrant in which his lawyer explained that Giangrasso's Social Security benefits had been terminated on the basis of the warrant but "would be reinstated, if this warrant were withdrawn."  (Ex. 2 to Giangrasso Decl.)  Heatherman avers that when he called the SSA to inquire into appealing the suspension of his benefits, he was told "there was no reason to appeal the suspension until the warrant that allegedly had been issued with respect to me had been cleared." (Decl. of Johnny L. Heatherman dated Jan. 3, 2007 ("Heatherman Decl."), at ¶ 8.)  Heatherman's subsequent request for reconsideration from the SSA further reveals that he knew the basis for his loss of benefits, since he argued that the

11

"[w]arrant was 19 years old[,] no attempt by Ohio to extradite has been made and I have tried to clear up the case. I thought it was cleared in '91 when I was told by Ohio Probation Dept. to pay court fees, which I did, they told me it would be cleared, I thought it was." (Ex. 1 to Heatherman Decl.)

Of the named plaintiffs, only Tony Gonzales was not informed that his benefits were suspended on the basis of a warrant for a parole or probation violation. But there is a simple reason for this: the SSA did not suspend his benefits on that basis. Rather, as his suspension letter informed him, Gonzales lost his benefits because the SSA concluded that he had "an outstanding warrant for a felony crime." (Ex. 2 to Decl. of Tony Gonzales dated Jan. 2, 2007.) Insofar as Gonzalez's suspension letter is probative, it further supports the conclusion that the SSA communicated the basis for its decisions to deny or suspend benefits.

This record clearly indicates that the SSA informed the named plaintiffs at the time of suspension that their benefits were revoked because of an outstanding warrant. As a result, plaintiffs had "a reasonable opportunity to learn the facts concerning [this] cause of action" before the statute of limitations expired. *City of New York*, 742 F.2d at 738. That this knowledge resulted from correspondence with the SSA, and not from an explicit regulation, does not make equitable tolling appropriate. *See Johnson v. Shalala*, 2 F.3d 918, 923 (9th Cir. 1993) (in a challenge to the SSA's policy of treating in-kind loans as income, the failure to publish the policy in a regulation did not have "the same practical effect on claimants as a secret policy" because the SSA notified claimants directly that their benefits were denied on the basis of the their in-kind loans (internal quotation marks omitted)).

The experiences of the named plaintiffs simply do not support the position that they did not receive notice that their benefits were being denied on the basis of an arrest warrant for a

12

probation or parole violation.  In the absence of evidence suggesting that the remaining class members were denied notice—and plaintiffs offer none—the Court cannot conclude that plaintiffs have demonstrated that equitable tolling for the class is warranted.

        4.  *Nationwide class*

The SSA contends that certification of the proposed nationwide class is undesirable because it would foreclose litigation of the issue presented here in other circuits.  This concern does not require rejecting a national class.  *See Califano v. Yamasaki*, 442 U.S. 682, 701-03 (1979).  "The certification of a nationwide class . . . is committed in the first instance to the discretion of the district court." *Id.* at 703.  In exercising that discretion, a court should "take care to ensure that nationwide relief is indeed appropriate in the case before it, and that certification of such a class would not improperly interfere with the litigation of similar issues in other judicial districts." *Id.* at 702.  It should also consider whether counsel is adequate to represent a nationwide class.  *See id.* at 703.

The nationwide class plaintiffs propose is appropriate.  Nationwide declaratory and injunctive relief would be proper given the SSA's application of a nationwide policy.  *See id.* at 702 ("[T]he scope of injunctive relief is dictated by the extent of the violation established."). There is no reason to suppose that such relief will interfere with ongoing litigation elsewhere, since no similar cases have been brought to the Court's attention.  The only case which the SSA invokes, *Slusser v. Astrue*, 557 F.3d 923 (8th Cir. 2009), is inapposite because it did not involve a challenge to the SSA's practice of relying on warrants to withhold benefits.  Finally, class counsel are able—two of the class's proposed lawyers have already demonstrated both experience and facility in actions of this type, obtaining a substantial settlement for a nationwide class of social security claimants denied benefits solely on the basis of an outstanding felony

warrant, (Pls.' Mem. at 15-17).  *See Martinez v. Astrue*, No. 08 Civ. 4735 (N.D. Cal. Sept. 24, 2009) (order approving class action settlement).  The SSA's apparent preference for litigating a single issue in multiple circuits does not outweigh the factors here that favor certification of a nationwide class.

    B.  Rule 23 Requirements

Having determined the appropriate parameters of the proposed class, the Court now turns to whether plaintiffs have met their burden of demonstrating compliance with Federal Rule of Civil Procedure 23.  Rule 23(a) provides that a class suit may be maintained only if "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class."  Additionally, the suit must qualify as one of the permissible types of class actions defined in Rule 23(b).

Plaintiffs have met their burden on the Rule 23(a) requirements.  A 2009 report by the SSA's Office of Inspector General states that as of Oct. 2006, there were 104,720 social security beneficiaries with probation or parole warrants.  (Pls.' Reply at 3 (citing Audit Report No. A-01-09-29177, The Social Security Administration's Fugitive Felon Program and the *Martinez* Settlement Agreement (Office of Inspector General, October 15, 2009) at 7, 9-10).)  From this data point one can easily infer that the proposed class is numerous enough to warrant certification.  *See, e.g.*, *Alcantara v. CNA Mgmt., Inc.*, 264 F.R.D. 61, 64-65 (S.D.N.Y. 2009) (numerosity presumed where a court can reasonably infer that the class contains 40 members or more).

14

In addition, a common question of law pervades this action, which challenges the evidentiary standard the SSA has applied to determine the eligibility of all class members. *See New York v. Heckler*, 105 F.R.D. 118, 124 (S.D.N.Y. 1985) ("Common questions of law and fact are presented in that the inquiry addressed by this litigation is not to a determination of the merits of individual claims, but to the legality of defendants' policy of using *per se* rules to deny disability claims.").

As to typicality, a class representative's claims are typical when they "'arise[] from the same course of events'" and rely on "'similar legal arguments to prove the defendant's liability.'" *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997) (quoting *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992)). The SSA argues that none of the named plaintiffs satisfy this requirement. The agency is correct in regard to plaintiffs Gonzales, Giangrasso and White, each of whom have had their benefits successfully restored. Plaintiffs concede that Gonzales and Giangrasso no longer have claims against the SSA, but maintain that White still does. (Pls.' Reply at 1.) The SSA restored White's benefits in December 2006, but his benefits were suspended from September 2006 to November 2006, (Decl. of Judith Wiltsie dated Sept. 1, 2010, at ¶ 3), and plaintiffs argue that White retains a claim for the payments he did not receive during that three-month period. Though plaintiffs assert that the SSA "admits" that this is the case, (Pls.' Reply at 1), they cite no such admission and the SSA's position is that White has "received all the relief [he] could expect to receive," (Def.'s Mem. in Opp. to Class Certification at 16). The record does not clearly address this point. It does, however, contain a letter sent to White and dated December 25, 2006 in which the SSA explained that it was "sending" White a check for "benefits due you through November, 2006." (Ex. 5 to White Decl.) Though White had not received that check as of January 5, 2007,

15

(White Decl. ¶ 20), plaintiffs have not provided any more recent information to show that the SSA failed to send the promised check.  In light of the SSA's stated intention to pay White past due benefits, the Court does not find that plaintiffs have met their burden of demonstrating that he has a claim that is typical of the rest of the class.

Heatherman and Clark, however, are typical.  Like the class generally, they claim to have been wrongfully denied benefits and they have not obtained any relief.  The SSA's only objection to Heatherman and Clark's typicality—and their adequacy, for that matter—is that they are subject to the defense of failure to exhaust administrative remedies.  Because the Court has waived the exhaustion requirement for the entire class, *see supra* Part II.A.2, this argument carries no weight.

Adequacy, the last of the Rule 23(a) conditions, "requires that plaintiffs demonstrate that class counsel is qualified, experienced, and generally able to conduct the litigation" and that "there is no conflict of interest between the named plaintiffs and other members of the plaintiff class."  *Marisol A.*, 126 F.3d at 378 (internal quotation marks omitted).  On the first point, the SSA does not contest the adequacy of Betina B. Plevan, Steven E. Obus, Jennifer J. Parish and Gerald A. McIntyre, the proposed class counsel.  The Court agrees that in light of their professional qualifications and experience handling class actions and social security litigation, (*see* Pls.' Mem. at 13-17; Exs. 2-5 to Decl. of Russell L. Hirschorn in Supp. of Class Certification dated June 22, 2010), the proposed class counsel are "qualified, experienced, and generally able to conduct the litigation."  On the second point, the Court finds that Heatherman and Clark share the interests of the rest of the class, namely to have the SSA adjudicate eligibility for benefits pursuant to statutorily mandated standards.

The Court notes, however, that Elaine Clark herself cannot serve as a class representative. She passed away in November 2008 and ceased being a nominal plaintiff in this action upon the Court's granting of an unopposed motion to substitute her children, Ryan Clark and Joy Jordan, as plaintiffs. *See* Order dated March 14, 2011. Though the motion to provide substitute plaintiffs in place of Elaine Clark was filed simultaneously with the motion for class certification, the parties debated Elaine Clark's viability as a class representative and did not address whether her substitutes—Ryan Clark and Joy Jordan—are qualified to serve in that capacity. There is some support for the proposition that substituted plaintiffs can assume the class representative role that otherwise would have been occupied by a deceased plaintiff. *See Lightfoot v. District of Columbia*, 629 F. Supp. 2d 16, 19-20 (D.D.C. 2009); *Roe v. City of New York*, No. 00 Civ. 9062, 2003 WL 22715832, at *3 (S.D.N.Y. Nov. 19, 2003). Given the parties seeming unconcern with this issue, the fact that Elaine Clark served as a putative class representative for nearly two years prior to her death—an interval in which she saw this case through the summary judgment stage—and that the Social Security Act entitles Clark's children to pursue her claim, *see* 42 U.S.C. § 404(d)(5), the Court concludes that newly substituted plaintiffs Ryan Clark and Joy Jordan may also serve as class representatives.

Finally, this class action may be maintained pursuant to Rule 23(b)(2), which permits class actions where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." This action qualifies under that provision because the SSA's use of an improper evidentiary standard "is generally applicable to the class and injunctive relief is requested." *New York v. Heckler*, 105 F.R.D. at 124.

## III. CONCLUSION

For the reasons set forth above, the Court grants plaintiffs' motion for class certification and hereby certifies the following class: All persons nationwide whose SSI and/or OASDI benefits were denied and/or suspended based solely on the existence of a warrant for an alleged violation of probation or parole during the period from October 29, 2006 to and including such time in the future when final relief is entered in this action. Plaintiffs Johnny L. Heatherman, Ryan Clark and Joy Jordan are to serve as representatives of this class and Betina B. Plevan, Steven E. Obus, Jennifer J. Parish and Gerald A. McIntyre are appointed as class counsel.

Dated: New York, New York
March 18, 2011

SO ORDERED:

_____
Sidney H. Stein, U.S.D.J.